Spear, J.
Two propositions are urged by defendant in error in support of the judgment of reversal: (a) that the case was not a proper one for inter-pleader, and (b) that the probate court of Franklin county had exclusive jurisdiction of all matters connected with the estate of Walter B. Beebe, deceased, and hence the Harrison county court had no jurisdiction of the case. If either proposition is sound the judgment of the circuit court should be affirmed.
1. Was the case a proper one for interpleader? It is insisted that section 5016, Revised Statutes, regulates the Avhole subject of interpleader, and that, inasmuch as that section limits such right to actions upon contract, or for the recovery of personal property, and as the case made in the petition and affidavit for interpleader do not bring it within the provisions of that section, the court was Avithout jurisdiction to entertain the action. And, it was wanting in jurisdiction for the further reason that Walter B. Beebe was a resident of the county of Franklin, at the time of his decease, and the estate was in process of settlement in the probate court of that county at the time the action was commenced in Harrison county.
The record does not show in what probate court the estate of Walter B. Beebe, deceased, was being settled, but it is probably not of consequence. It is true that the section referred to gives authority to a defendant before answer in an action upon contract, or for the recovery of personal property, to file affidavit and ask that contesting claimants interplead, and provides for the payment into court for safe keeping of the subject of the action, and it would be safe to concede that the case does not fall within either class named. But does it follow that the statute was *44 intended to regulate the whole subject-matter of inter-pleader and take away the equitable remedy theretofore existing and enforced by the well-established practice of courts of chancery? It is to be noted that no such purpose is expressed. The section was section 42 of the code of civil procedure, and stands to-day as enacted in 1853. Section 603 of the same act has this provision: “If a case ever arise, in which an action for the enforcement and protection of a right, or the redress or prevention of a wrong, can not be had under this code, the practice heretofore in use may be adopted, so far as may be necessary to prevent a failure of justice.” This language would seem to be broad enough to cover the case in hand. But, aside from this, the matter of interpleader is of equitable cognizance. It may be resorted to “where two or more persons severally claim the same thing under different titles or in separate interests from another person, who not claiming any title or interest therein himself, and not knowing to which of the claimants he ought to render the debt or duty claimed, or deliver the property, is either molested by an action or actions brought against him, or fears that he may suffer injury from the conflicting claims of the parties.” 2 Story’s Eq. Jur., sec. 806. The cause below seems to be described by this language. And that the equitable action of interpleader still survives, we think has been the common understanding of the bench and bar since the enactment of the code. In First Presbyterian Society v. First Presbyterian Society, 25 Ohio St., 128, it is held that “where a trust is created for the benefit of an incorporated religious society, and there are two bodies which claim to be such society, a court of equity may require the claimants to interplead; and may proceed to ascertain the true beneficiary without compelling either party to establish its corporate rights at law.” Such, too, seems to be the understanding of the text-writers and of the courts of sister states. 3 Pom. Eq., sec. *45 1329; 2 Story’s Eq. Jur., sec. 823; Beach’s Mod. Eq. Prac., sec. 173; 1 Foster’s Fed. Prac., sec. 88; Barry v. Mut. L. Ins. Co., 53 N. Y., 536; Board of Education v. Scoville, 13 Kas., 17.
Much more might be added of like import but it seems to us unnecessary. We are of opinion that the statute, section 5016, was intended as auxiliary to the chancery practice as theretofore understood, and as directing the practice in the particular classes of cases named, and was not intended to regulate the whole subject-matter of interpleader, and that the case made by the petition and affidavit was a proper one for interpleader.
This conclusion is not inconsistent with any holding of this court in Cross v. Armstrong, 44 Ohio St., 613, or in Johnston v. Oliver, 51 Ohio St., 6.
2. Was the court of common pleas deprived of jurisdiction because of the exclusive jurisdiction of the probate court in the matter of the estate of Walter B. Beebe, deceased? In support of the affirmative of this proposition, it is insisted that any order which the court of common pleas might make against the administrator might be in conflict with the order of the probate court, and that such conflict between courts would work irreparable confusion and mischief, and is not permitted by our statutes. Section 524, Revised Statutes, is cited. That section gives exclusive jurisdiction to the probate court in certain matters. The language of the third division of the section is quoted, viz: “3. To direct and control the conduct, and to settle the accounts of executors and administrators, and to order the distribution of estates.” We are unable to see that the language of this clause, as construed and understood by practice which we believe to be universal, supports the contention. No question is made, or can be made, that the probate court has exclusive original jurisdiction of the subject matter in respect to that of which it is given any jurisdiction. But it is to be specially *46 noted that the only power here given with respect to the distribution of estates is to order distribution. This does not mean that the probate court may find and direct the persons to whom distribution is to be made, and the amounts to each, but means simply that, as a result of the settlement of accounts of executors and administrators, and as a step necessary to a final distribution of the trust fund, a general order of distribution is to be made. The lights of the beneficiaries, Avliere there is conflict, are to be Avorked out in other tribunals, and by process and pleadings adapted to that end. This conclusion is in accord Avith and is supported by the holding of this court in a number of cases, the first of which is McLaughlin v. McLaughlin, 4 Ohio St., 508. The controversy in that case arose under the second section of the statute as enacted March 11, 1853 (51 O. L., 167), the third and fourth paragraphs of which are as folIoavs : “3. To direct and control the conduct and to settie the accounts of executors and administrators. 4. To enforce the payment of debts and legacies of deceased persons, and the distribution of the estates of intestates.” TÍie holding is that that section invested the court Avith poAver, upon final settlement of the accounts of the administrator, to determine the amounts justly due to distributees, and to order distribution of the money remaining in his hands to the persons entitled thereto, and that the order has the force of a judgment capable of being enforced by execution, but that the powers of the court were exhausted Avhen the order was made, and it had not jurisdiction to entertain a petition to enforce collection by a distributee against the administrator, and' hence reversed the judgment of the probate court which had undertaken to adjudicate such an action. In the opinion Ranney, J., observes: “The act did not extend so far as to permit the executor or administrator to sue in that court for a debt due to the estate, or to subject him to be sued there for a debt dis *47 puted by him; but when the funds were in his hands, and the creditors were ascertained, and their debts liquidated, it conferred full power upon the court to compel him to do his whole duty in disbursing the fund, as well to legatees and distributees as to creditors.” But section 2 of the act of March 11, 1853, was amended at the next session of the legislature (52 O. L., 103), apparently for the purpose of limiting the power of the probate court as to distribution; and in place of paragraphs 3 and 4 (heretofore quoted), there was supplied paragraph 3 (heretofore quoted), as it is now found in section 524. Commenting upon this change, the learned judge observes further on in the opinion: “This case does not call for a construction of the amendatory act, but the conclusion is irresistible, that some change was intended; and as the specific power to enforce the payment of debts, legacies and distributive shares is omitted, it may not unreasonably be supposed that in the opinion of the general assembly, the determination of the difficult questions of laAV and fact often invoUed in the settlement of rights of legatees and distributees ought not longer to remain with that court; and that the order of distribution here referred to, should be a general direction to the administrator or executor, to disburse the amount remaining in his hands after a final settlement of his account and to be used as a foundation for his liability, when sued elseAA'here, rather than a specific ascertainment of the amount due each legatee or distributee and its enforcement by execution.”
The same principle is distinctly held in Swearingen v. Morris, 14 Ohio St., 424; in Cox v. John, 32 Ohio St., 532, and in Armstrong v. Grandin, 39 Ohio St., 368. It is not necessary to do more than cite these cases, for if it be possible,to settle any rule of law by repeated adjudications of this court it is settled that, under our statute, the power of the pro *48 bate court is exhausted by the making of the general order of distribution.
Attention is called by counsel for defendant in error to the case of Hupp v. Hupp, 61 Ill. App., 445. The decision seems to support the claim of defendant in error, but we have not cited to us the precise phraseology of the Illinois statute, and in any event could hardly be expected to yield a conviction as to the proper construction of our own statute, supported as it is by the decisions hereinbefore cited, to a contrary holding by an intermediate court of a sister state.
Confining the final action of the probate court to a general order of distribution, as the rule announced makes necessary, it is not perceived that any proper judgment or order which the court of common pleas might make, would in the least conflict with it.
The ground of error against the judgment of the common pleas made in the petition in error of Angie Beebe in the circuit court, and which was sustained by that court, was in overruling her motion to quash the service as to her, and in rendering judgment against her. We think that the court did not err in these respects and that the judgment of the circuit court reversing the common pleas should be reversed and that of the common pleas affirmed.

Reversed.